# 2019-64569 / Court: 127

| | | |
|---|---|---|
| | CAUSE NO. _____ | |
| **ALAINA VILLA** | § | **IN THE DISTRICT COURT** |
| *Plaintiff* | § | |
| | § | |
| **VS.** | § | **_____ JUDICIAL DISTRICT** |
| | § | |
| **TARGET CORPORATION and** | § | |
| **ELAINE SWAIN, Individually** | § | |
| *Defendants* | § | **HARRIS COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION

ALAINA VILLA ("PLAINTIFF") files her Original Petition complaining of Defendants TARGET

CORPORATION ("TARGET") and ELAINE SWAIN, Individually ("SWAIN") (collectively referred to as

"DEFENDANTS") and would respectfully show the Court and jury as follows:

### I.
### DISCOVERY CONTROL PLAN

1.      Pursuant to Rule 190.4 of the Texas Rules of Civil Procedure, discovery is intended to be

conducted under Level Three (3).  Plaintiff requests the Court to enter a Level Three (3)

Scheduling Order or Docket Control Order.

### II.
### PARTIES & SERVICE

2.      Plaintiff is an individual and resident citizen of Houston, Harris County, Texas.

3.      Defendant, **TARGET CORPORATION**, is a Minnesota corporation, registered and

authorized to do business in the State of Texas. This Defendant can be served with Citation by

serving its registered agent for service of process, CT Corporation at 1999 Bryan Street, Suite 900,

1

Dallas, Texas 75201. The clerk is requested to issue service of Citation at this time and serve this Defendant by certified mail at the address listed above.

4.    Defendant, ELAINE SWAIN, is an individual and resident citizen of Houston, Harris County, Texas. This Defendant can be served with Citation by serving her at her address at 4210 Old Arbor Way Humble, Texas 77346. The clerk is requested to issue service of Citation at this time and serve this Defendant by certified mail at the address listed above.

### III.
### JURISDICTION AND VENUE

5.    Plaintiff seeks only monetary relief over ONE MILLION and no/100 dollars ($1,000,000.00), including damages of any kind, penalties, costs, expenses, pre-judgment interest and attorney fees, thus the damages in this case, exclusive of interest and costs, are within the jurisdictional limits of this Court.

6.    Defendant TARGET had and continue to have a continuous and systematic contacts with the State of Texas sufficient to establish general jurisdiction over it.   Specifically, Defendant TARGET conducts and/or conducted business in Texas by providing goods and services throughout Texas.

7.    This Court has personal jurisdiction over Defendant SWAIN as she is a resident of the State of Texas.

8.    Venue is proper in Harris County, Texas, because all or a substantial part of the events giving rise to this cause of action occurred in Harris County, Texas.

### IV.
### FACTUAL BACKGROUND

9.      On July 16, 2018, an unidentified Hispanic female entered the self-checkout line at the

Target store located at 6931 FM 1960 E., in Humble, Harris County, Texas ("Target--Humble") and

began scanning merchandise from her shopping cart.  The items in the cart of the unidentified

female consisted mainly of household items.

10.     The next day, on July 17, 2018, the unidentified Hispanic female was seen again at the

Target—Humble.  She entered the self-checkout and apparently scanned a cart full of household

items.

11.     The unidentified Hispanic female then exited the Target--Humble.

12.     Defendant SWAIN suspected the unidentified Hispanic female of "palming" a taco

seasoning packet and scanning the barcode on the packet rather than the actual barcode of the

item she was pretending to buy thereby disguising the real price of the merchandise.

13.     Defendant SWAIN reviewed the surveillance video which she later told police confirmed

her suspicion that the unidentified Hispanic female ("Taco Seasoning Bandit") was in fact

engaging in theft.

14.     Defendant Swain informed the police that the surveillance video from July 17, 2018,

showed the Taco Seasoning Bandit at Target—Humble exiting the store and walking to her car.

15.     Defendant Swain informed the police that the surveillance video from July 17, 2018,

showed the Taco Seasoning Bandit placed the items into the trunk of her car.

16.     Defendant Swain informed the police that the Taco Seasoning Bandit walked to a "white

Toyota Corolla bearing Texas License Plate **CWM 1803.**"

16.     However, on information and belief Plaintiff claims the surveillance video from July 17,

2018, actually showed something far different than what Defendant SWAIN told the police.

17.     Based on information and belief Plaintiff claims that on July 17, 2018, the Target—Humble video surveillance showed the Taco Seasoning Bandit exit the store.

18.     Based on information and belief Plaintiff claims that on July 17, 2018, the Target—Humble video surveillance showed the Taco Seasoning Bandit walk to her car.

19.     Based on information and belief Plaintiff claims the surveillance video showed the vehicle driven by the Taco Seasoning Bandit was white and the wheels were stainless steel or silver.

20.     Based on information and belief Plaintiff claims on July 17, 2018, the Target—Humble video surveillance showed the Taco Seasoning Bandit's car exit the store parking lot.

21.     Based on information and belief Plaintiff claims the surveillance video showed the vehicle driven by the Taco Seasoning Bandit contained the following partial license plate number: **689-J.**

22.     Based on information and belief Plaintiff claims the vehicle driven by the Taco Seasoning Bandit contained a large decal in the back window.

23.     The vehicle of the Taco Seasoning Bandit was the same make and model as Plaintiff's vehicle, but a different year model with slight but noticeable differences.

24.     Based on information and belief Plaintiff claims on July 18, 2018, Target first published an internal report containing information specific to the Taco Seasoning Bandit.

25.     Based on information and belief Plaintiff claims Target's report stated the Taco Seasoning Bandit's vehicle had license plate of 689-J.

26.     Based on information and belief Plaintiff claims Target's report contained photographs of the Taco Seasoning Bandit's vehicle.

27.     Based on information and belief Plaintiff claims Target's report contained photographs and descriptions of the actual Taco Seasoning Bandit.

4

28.     Based on information and belief Target pulled video surveillance from a completely different store than Target—Humble. This additional video surveillance was from the Target located at 19511 IH 45, Spring, Harris County, Texas (Target—Spring)

29.     Google Maps indicates the distance from Target—Humble to Target—Spring is approximately 20 miles and 30 minutes. Those who reside in the Houston area know these areas to be separate and distinct areas of Houston.

30.     Based on information and belief Plaintiff claims the Target—Spring video surveillance showed Target identified an additional vehicle of interest in their parking lot.

31.     Based on information and belief Plaintiff claims Target captured her Toyota vehicle on video surveillance at Target--Spring on July 18, 2018.

32.     Based on information and belief Plaintiff claims her vehicle had striking and obvious differences to the one surveilled the night before at the Target—Humble. For instance, one striking difference was the license plate on the vehicle at Target—Spring read: CWM 1803—not 689-J.

33.     Another striking difference between the vehicles were the rims on the vehicle belonging to Plaintiff at Target—Spring were black, not silver like the vehicle driven by the Taco Seasoning Bandit.

34.     Plaintiff's receipt from Target—Spring indicated she purchased party favors, bounce balls, a gift bag, candles, bread and milk at 1:16 PM on July 18, 2018. Her total receipt was $37.34.

36.     Based on information and belief Plaintiff claims nothing in Target's possession indicated Plaintiff's vehicle may have belonged to the Taco Seasoning Bandit.

5

37.     Based on information and belief Plaintiff claims on July 18, 2018, Defendants knew or should have known that Plaintiff was not the Taco Seasoning Bandit.

38.     Regardless, on July 19, 2018, Deputy D. Willis (LE Badge # 42019) was dispatched to a Theft call at the Target—Humble store where he met with Defendant Swain.

39.     During the interview with Deputy Willis Defendant Swain committed the Texas Penal Code § 37.08 offense of False Report to a Peace Officer. Defendant Swain, with intent to deceive, knowingly made false statements that were material to a criminal investigation and made the statements to Officer D. Willis. Specifically, Defendant Swain told Officer Willis the following:

      a.     Plaintiff was the actual Taco Seasoning Bandit;

      b.     Plaintiff was surveilled at the Target—Humble on July 16, 2018 and July 17, 2018;

      c.     Plaintiff exited the Target—Humble store on July 17, 2018, and walked to a white Toyota Corolla, bearing Texas license plate **CWM 1803.** However, the actual Taco Seasoning Bandit drove away in a vehicle with a partial license plate of **689-J.**

40.     Based on information and belief Plaintiff claims Defendant Swain miraculously and maliciously transformed surveillance footage of Plaintiff's vehicle from twenty (20) miles away on a different day to the actual surveillance footage of the Taco Seasoning Bandit.

41.     As a direct result of Defendant Swain's material misrepresentations Officer Willis "ran the [incorrect] license plate and found the vehicle to be registered to [Plaintiff]".

42.     Almost two (2) months later on September 11, 2018, a criminal complaint was filed against Plaintiff styled: *The State of Texas v. Alaina Villa*; Cause No. 2224013; Harris County Criminal Court at Law No. 3; Judge Erica Hughes, presiding.

43.     Defendants accused Plaintiff of unlawfully appropriating and otherwise exercising control over property, namely one air purifier, one vacuum, and one comforter on July 16, 2018.

44.     Plaintiff's credit card receipts show she shopped at Wal-Mart #5353 on July 16, 2018, not Target—Humble or Target–Spring. She spent $23.94 at Wal-Mart.

45.·    Plaintiff was forced to hire the services of attorney Israel Santana, SBOT # ███████ for⁻ her criminal case and the undersigned counsel for this case.

46.     On September 18, 2018, Plaintiff voluntarily turned herself in to the Harris County Sheriff's office and was arrested by Officer S. R. Leslie.

47.     Plaintiff endured being "booked" or photographed and fingerprinted by the police.

48.     In her "mug shot" Plaintiff's hair is brown and has never in history been purple. She has a natural part of her hair on the left side of her forehead, if facing Plaintiff.

49.     Plaintiff was brought before the Court and bail was set at $500.00 and the Court accepted a personal bond for Plaintiff's release from confinement.

50.     Plaintiff was ordered to appear in court on October 23, 2018, at 8:00am.

51.     Plaintiff was ordered to adhere to Supervision Requirements such as, reporting to the Pretrial Services Office as soon as she was released from jail.  If the office was closed she was required to report on the first business day following her release. This office is open on Sundays from 8am to 1pm and Monday through Friday 7am to 5pm.  The offices are closed on Saturdays.

52.     On October 23, 2018, Plaintiff left home early in the morning and arrived in downtown Houston before 8am and parked and found her courtroom.  She waited for her case to be called amongst all the others and then when her case was called she was informed that the case had

7

been reset until December 18, 2018. The Court noted on the Reset form that "[Defendant] says Not her".

53.     On December 18, 2018, Plaintiff left home early in the morning and arrived in downtown Houston before 8am and parked and found her courtroom. She waited for her case to be called amongst all the others and then when her case was called she was informed that the case had been reset until February 20, 2019. The Court noted on the Reset form "Waiting on surveillance video".

54.     On February 20, 2019, Plaintiff left home early in the morning and arrived in downtown Houston before 8am and parked and found her courtroom. She waited for her case to be called amongst all the others and then when her case was called she was informed that the case had been reset until April 10, 2019. The Court noted on the Reset form "Email DA to get copy of video as it's available".

55.     On February 10, 2019, Plaintiff left home early in the morning and arrived in downtown Houston before 8am and parked and found her courtroom. She waited for her case to be called amongst all the others and then when her case was called she was informed that the case had been reset until February 15, 2019. The Court noted on the Reset form that the case was reset by the Court.

56.     On February 15, 2019, Plaintiff left home early in the morning and arrived in downtown Houston before 8am and parked and found her courtroom. She waited for her case to be called amongst all the others and then when her case was called she was informed that the case had been reset until May 6, 2019. The Court noted on the Reset form that the reason for the reset was "D.A. Evaluate Case"

57.     On May 6, 2019, Plaintiff left home early in the morning and arrived in downtown Houston before 8am and parked and found her courtroom. She waited for her case to be called amongst all the others and then when her case was called she was informed that the case had been reset until June 26, 2019. The Court noted on the Reset form that the reason for the reset was "D.A. Evaluate Case"

58.     On June 26, 2019, Plaintiff left home early in the morning and arrived in downtown Houston before 8am and parked and found her courtroom. She waited for her case to be called amongst all the others and then when her case was called she was informed that the complaint had been dismissed.

59.     Throughout her legal ordeal Plaintiff was offered "sweetheart deals" such as pleading guilty and merely paying a fine.

60.     Proudly knowing her innocence, Plaintiff rejected all attempts to enter into a plea deal.

61.     Throughout her legal ordeal Plaintiff was reminded time and gain that she should not fight against the legal system and corporate giants such as Target. Plaintiff was reminded that she should just "go along" and get this ordeal over and out of her life. Plaintiff was not raised to ride in the back of the public bus because Target and its people desired her there.

62.     Plaintiff has two children, ages 9 (male) and 4 (girl). Plaintiff is a loving, nurturing and proud parent that has not and will not raise her children to ride on the back of the bus either.

63.     Throughout this ordeal Plaintiff's oldest child questioned if his mother was really a thief.

64.     Plaintiff, a college graduate, worked in the banking industry for years until Target decided to take that precious commodity away from her with false and frivolous charges.

9

65.     On July 10, 2018, Plaintiff had applied for and on November 7, 2018, accepted a job at Community Resource Credit Union in Houston, Harris County, Texas, making 16.50/hr and starting November 19, 2018.

66.     On November 18, 2018, while the frivolous and malicious charges by Target were pending and being reset waiting on Target to produce evidence of a crime, Plaintiff received notice by way of a letter from Community Resource Credit Union indicating that her application was conditioned on a successful background check. Plaintiff's potential employer advised her that the "criminal charge...was at least part of the reason for the rejection of [her] application".

67.     On May 1, 2019, Plaintiff was informed by a consumer reporting agency (JDP) that criminal information about Plaintiff was provided to a potential employer namely:  Spring ISD Volunteers.  In other words, when Plaintiff tried to volunteer at her children's school, Burchett Elementary, the incident at Target came front and center, again.

68.     While Target enjoyed profit and legal gamesmanship, Plaintiff was forced to cash out her 401k retirement account in order to make ends meet and restructure her upcoming nuptials to a backyard affair from the shindig that was proposed, planned and expected.

69.     Target has a history of legal gamesmanship as it applies to asset protection. For instance, Target was sued for malicious prosecution in McKinney, Texas, for prosecuting a Texas customer and **two Target team members** on bogus claims of fraudulent couponing.  Target's customer claimed all coupons used by her were legitimate and Target should have known that before bringing false charges against her that caused her two years of her life, her life's savings and the stress of a felony trial caused her the loss of her unborn child.

70.     Target's loss prevention system is the very definition of the axiom, "information is power".

71.     In *Johnson v. Target Stores, Inc.*, 791 N.E.2d 1206 (Ill. App. Ct. 2003), the Court stated:

   a.    Target operates a chain of retail stores and maintains a security function at each store that it refers to as "assets protection."

   b.    The assets protection department is responsible for preventing, investigating, and processing incidents of customer and employee theft.

   c.    Positions within the assets protection department include the district assets protection team leader (DAPTL), the assets protection team leader (APTL), the senior assets protection specialist (Senior APS), and the assets protection specialist (APS).

   d.    The DAPTL is responsible for assets protection at several stores within his or her district, the APTL is responsible for assets protection at a particular store, and the Senior APS and APS are hourly security employees.

   e.    When an item is scanned, the bar code and the price are recorded by a computer` and are then printed on a receipt;

   f.    Target maintains an asset protection office where security employees can view and record transactions on a video monitor;

   g.    Target maintains a system called POSSI, which allows assets protection personnel to watch an image of the receipt of a transaction on a video monitor as the items are rung up by a cashier. This allows assets protection workers to compare what they observe with the actual receipt of the transaction.

## CAUSES OF ACTION

**A.     Count 1 – Malicious Prosecution**

72.     Between July 17, 2018 and June 26, 2019, Plaintiff was maliciously prosecuted by Defendants.

73.     A criminal prosecution was commenced against Plaintiff.

74.     Defendants initiated or procured the prosecution.

75.     The prosecution was terminated in Plaintiff's favor.

76.     Plaintiff was innocent of the charges.

77.     Defendants did not have probable cause to initiate or procure Plaintiff's prosecution. Defendants lacked facts and circumstances that would create a belief in a reasonable person, acting on the facts within his/her knowledge, that the person charged was guilty of a crime.

78.     Defendants acted with *malice* as that term is known and defined under Texas law. Defendants did not fully and fairly disclose all material information and knowingly provided false information about Plaintiff to the police and prosecutor.

79.     Defendants withheld exculpatory information from authorities.

80.     Plaintiff suffered damages as a result of the malicious prosecution.

**B.     Count 2 – False Imprisonment**

81.     Each and every allegation contained herein is re-alleged as if set forth verbatim.

82.     On September 18, 2018, Defendants procured Plaintiff's false imprisonment.

83.     Defendants willfully detained Plaintiff.

84.     The detention was without Plaintiff's consent.

85.     The detention was without legal authority or justification.

86.    The detention was the result of malice.

87.    The wrongful imprisonment caused Plaintiff to suffer damages.

**C.    Count 3 – Defamation (Libel/Slander)**

88.    Each and every allegation contained herein is re-alleged as if set forth verbatim.

89.    Defendants made and/or published a statement of fact about Plaintiff, namely that Plaintiff was a thief.

90.    The statement of fact referred to Plaintiff as a thief when in fact she was not the Taco Seasoning Bandit.

91.    The statement of fact was defamatory.

92.    The statement was false.

93.    Defendants acted with malice.

94.    Defendants made statements that falsely charged Plaintiff with the commission of a crime and is considered libel *per se*.

**D.    Count 4 – Abuse of Process**

95.    Each and every allegation contained herein is re-alleged as if set forth verbatim.

96.    Defendants improperly made use of the legal process after the issuance. In other words, Defendants used the legal system for a purpose other than that for which it was designed.

97.    Plaintiff was served with valid process.

98.    Defendants made an illegal, improper or perverted use of the process after it was issued.

99.    Defendants had an ulterior motive or purpose in using the process.

100.   Plaintiff suffered injury as a result of the improper use.

**E.    Count 5 – Negligence/Gross Negligence**

13

101. Each and every allegation contained herein is re-alleged as if set forth verbatim.

102. In addition to other counts, Plaintiff's injuries were the result of Defendants' negligence and/or ongoing negligent activity on the premises at the time of the injuries, not a condition of the premises.

103. Plaintiff alleges that Defendants have engaged in negligent conduct that has caused her harm. At the time of the incident(s), Plaintiff was a customer of Defendant TARGET. Defendants owed a duty of care to its customers. The proximate cause of Plaintiff's damages was due to the negligence, gross negligence, and/or malice of the Defendants, their agents, servants or employees. Such acts and/or omissions include but are not limited to the following:

    a. Failing to properly and adequately investigate;

    b. Failing to follow proper investigative procedure;

    c. Failing to follow internal guidelines or policies and procedures for investigating theft;

    d. Such other and further acts and/or omissions as may be shown by the evidence at the trial of this case.

104. Each of the foregoing acts and/or omissions when viewed objectively from the standpoint of Defendants, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to the Plaintiff, of which Defendants had an actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety and/or welfare of Plaintiff. As such, each of the foregoing acts and/or omissions, singularly or in combination with others, constituted negligence and gross negligence, which were a proximate cause of injuries sustained by the Plaintiff, which form the basis of this action.

## VI.
## DAMAGES

105.     Upon the trial of this case, it shall be shown that Plaintiff was caused to sustain injuries and damages as a result of Defendants' conduct.

106.     Defendants' breach of duty caused injury to the Plaintiff, which resulted in the following damages:

> a.     Reasonable and necessary medical care and expenses in the past;
>
> b.     Reasonable and necessary medical care and expenses in the future;
>
> c.     Loss of earning capacity in the past;
>
> d.     Loss of earning capacity in the future;
>
> e.     Pain and Suffering & Mental Anguish in the past;
>
> f.     Pain and Suffering & Mental Anguish in the future;

107.     Plaintiff's injuries resulted from Defendants' gross negligence, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code. Plaintiff seeks such exemplary damages from Defendants.

108.     Plaintiff respectfully requests the Court to award the amount of loss Plaintiff has incurred in the past and will incur in the future.  There are certain elements of damages to be considered separately and individually for the purpose of determining the sum of money that would fairly and reasonably compensate Plaintiff for her injuries, damages and losses incurred and to be incurred.  From the date of the occurrence in question until the time of trial of this cause, Plaintiff

15

seeks every element of damage allowed by law with respect to the causes of action mentioned above.

109.    Nothing Plaintiff did or failed to do caused or contributed to Plaintiff's injuries and damages.

110.    Plaintiff reserves the right to amend and state further with respect to her damages.

## VII.
## PRE-JUDGMENT INTEREST

111.    Plaintiff prays for recovery of pre-judgment interest at the rate allowed by law or at a rate commensurate with the actual rate of interest in the market place, or alternatively, at such other rate as may be legally proper because of the delay in receiving their damages and to avoid unjust enrichment to Defendants.

## VIII.
## REQUEST FOR DISCLOSURE

112.    Under Texas Rule of Civil Procedure 194, Plaintiff requests that Defendants disclose, within 50 days of service of this request, the information or material described in Rule 194.2. Please provide copies of documents and other tangible items with the response pursuant to Rule 194.4.

## IX.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that Defendants be cited to appear and answer and, on final trial, that Plaintiff be awarded a judgment against Defendants in the amount of more than $1,000,000; together with pre-judgment interest at the

maximum rate allowed by law, post-judgment interest at the legal rate, costs of court, attorney

fees and such other and further relief to which Plaintiff may be justly entitled to at law or in

equity.

Respectfully submitted,

**THE GRADY LAW FIRM, P.C.**

Keith Grady
SBOT: 00786853
2219 Sawdust Rd., Suite 1904
The Woodlands, Texas 77380
Telephone: (713) 228-2200
Facsimile: (713) 980-5305
**ATTORNEY FOR PLAINTIFF**

CAUSE NO. 2019-64569

| | | |
|---|---|---|
| ALAINA VILLA, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff* | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| TARGET CORPORATION AND | § | |
| ELAINE SWAIN, INDIVIDUALLY, | § | |
| | § | |
| *Defendants.* | § | 127th JUDICIAL DISTRICT |

## DEFENDANTS' ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Target Corporation and Elaine Swain, Defendants in the above entitled and numbered cause, and in answer to the Plaintiff's pleadings on file herein, would respectfully show unto the Court as follows:

### A.
### GENERAL DENIAL

1.     Defendants assert a general denial as is authorized by Rule 92 of the Texas Rules of Civil Procedure, and respectfully request that Plaintiff be required to prove the charges and allegations against these Defendants by the evidence as is required by the laws of the State of Texas.

### B.
### CREDIT / OFFSET

2.     In the unlikely event that Defendants are found liable to Plaintiff, Defendants affirmatively plead that they are entitled to a dollar-for-dollar credit/offset for any and all sums Plaintiff has received or may hereafter receive by way of any and all

payments or settlements of any claims, causes of action, or potential causes of action arising out of the incident made the basis of this lawsuit. This written election is being made pursuant to §33.012(b)(1) of the Texas Civil Practice & Remedies Code.

## C.
## RIGHT TO SUPPLEMENT

3. Defendants respectfully reserve the right at this time to amend this Original Answer to the Plaintiff's allegations after said Defendants have had the opportunity to investigate more closely these claims, as is the right and privilege of said Defendants under the Rules of Civil Procedure and the laws of the State of Texas.

## D.
## DISCOVERY DOCUMENTS

4. By way of further Answer, Defendants hereby give actual notice to the Plaintiff, that any and all documents produced during discovery may be used against the party Plaintiff, if any, at any pre-trial proceeding and/or trial of this matter without the necessity of authenticating the document. This notice is given pursuant to Rule 193.7 of the Texas Rules of Civil Procedure.

## E.
## PAID OR INCURRED

5. Defendants invoke §41.0105 of the Texas Civil Practice and Remedies Code and request that, to the extent Plaintiff seeks recovery of medical or healthcare expenses, the evidence to prove such loss be limited to the amount actually paid by or on behalf of the Plaintiff, as opposed to the amount charged.

**F.**
**NET LOSS REDUCTION**

6.     Defendants also invoke §18.091 of the Texas Civil Practice and Remedies Code and request that, to the extent that Plaintiff seeks recovery for loss of earnings, loss of earning capacity, loss of contributions of a pecuniary value, or a loss of inheritance, that the evidence to prove such loss must be present in the form of a net loss after reduction for income tax payments or unpaid tax liability.  Defendants further request that the Court instruct the jury as to whether any recovery for compensatory damages sought by Plaintiff is subject to federal income taxes.

**G.**
**JURY DEMAND**

7.     Defendants herein demand a trial by jury on all contested fact issues. On this date, a jury fee has been paid.

WHEREFORE, PREMISES CONSIDERED, the above named Defendants, Target Corporation and Elaine Swain, having fully answered herein, pray that Plaintiff take nothing by reason of this suit, and that Defendants be discharged.  Defendants pray further that all court costs expended or incurred in this cause be assessed and taxed against Plaintiff, and for all such other and further relief, both general and special, at law and in equity, to which Defendants may show themselves justly entitled.

Respectfully submitted,

GERMER, PLLC

By: _____

     TROY A. WILLIAMS
     State Bar No. 00788678
     VALERIE LY
     State Bar No. 24053692
America Tower
2929 Allen Parkway, Suite 2900
Houston, Texas  77019
Telephone: (713) 650-1313
Facsimile: (713) 739-7420
E-Mail: twilliams@germer.com
E-Mail: vly@germer.com
ATTORNEYS FOR DEFENDANTS,
TARGET CORPORATION AND
ELAINE SWAIN

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the above and foregoing instrument has been duly served on the following counsel through the Court's e-service on this the 7th day of October, 2019:

Keith Grady
The Grady Law Firm, P.C.
2219 Sawdust Road, Suite 1904
The Woodlands, Texas  77380
*Attorney for Plaintiff*

_____
TROY A. WILLIAMS

CAUSE NO. 2019-64569

| ALAINA VILLA, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff* | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| TARGET CORPORATION AND | § | |
| ELAINE SWAIN, INDIVIDUALLY, | § | |
| | § | |
| *Defendants.* | § | 127th JUDICIAL DISTRICT |

# RULE 216 REQUEST FOR JURY TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

In accordance with the provisions of Rule 216 of the Texas Rules of Civil Procedure, Defendants, Target Corporation and Elaine Swain, request that when this case proceeds to trial it be placed on the Court's jury trial docket.

Respectfully submitted,

GERMER, PLLC

By: _____
TROY A. WILLIAMS
State Bar No. 00788678
VALERIE LY
State Bar No. 24053692
America Tower
2929 Allen Parkway, Suite 2900
Houston, Texas 77019
Telephone: (713) 650-1313
Facsimile: (713) 739-7420
E-Mail: twilliams@germer.com
E-Mail: vly@germer.com
ATTORNEYS FOR DEFENDANTS,
TARGET CORPORATION AND
ELAINE SWAIN

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument has been duly served on the following counsel through the Court's e-service on this the 7th day of October, 2019:

Keith Grady
The Grady Law Firm, P.C.
2219 Sawdust Road, Suite 1904
The Woodlands, Texas  77380
*Attorney for Plaintiff*

_____
TROY A. WILLIAMS